[No. 4679.    Decided July 15, 1903.]

J. E. RAFFERTY, *Respondent,* v. PORTLAND, VANCOUVER AND YAKIMA RAILWAY COMPANY, *Appellant.*

RAILROADS — KILLING STOCK — EVIDENCE.

In an action for the killing of stock on a railroad right of way through negligence in the operation of the train at a point where stock was frequently encountered and likely to be caught in a trap, the plaintiff is entitled to show lack of cattle guards,

although not alleged, as descriptive of the place, and as bearing upon the degree of care required under the conditions existing at that point.

SAME — NEGLIGENCE — QUESTION FOR JURY.

Where a witness of the plaintiff testifies that a locomotive and train of eleven empty cars, running upon a down grade of one per cent. at the rate of ten or twelve miles an hour, could be stopped within sixty feet, negligence in failing to stop the train is a question for the jury, notwithstanding the testimony of the defendant's employees to the effect that the train was in all respects properly equipped and operated and that it could not have been stopped in any event before reaching the stock on the track about 400 feet away.

SAME.

Where a train consisting of a locomotive and eleven empty cars was running on a down grade of one per cent. at about ten or twelve miles an hour at a point where stock was frequently encountered and likely to be caught in a trap, it is a question for the jury whether defendant was guilty of negligence in running at this place at such a rate of speed that the train could not be controlled.

Appeal from Superior Court, Clarke County.—Hon. ABRAHAM L. MILLER, Judge. Affirmed.

*W. W. McCredie, E. M. Rands* and *J. W. Hopkins,* for appellant:

The unsupported testimony of witness Groves to the effect that the train could have been stopped within sixty feet is so unreasonable that no jury would be authorized to accept it as overthrowing the overwhelming testimony to the contrary. *Air-Line Ry. Co. v. Gravitt,* 93 Ga. 369. And refusal to direct a verdict for the defendant is error of law. *Volkman v. Chicago, St. P., M. & O. R. R. Co.,* 37 N. W. 731; *Lomer v. Meeker,* 25 N. Y. 361. The defendant fully discharged its duty. Barrows, Negligence, 343.

Where the positive testimony of defendant's employees shows that the injury could not have been avoided, the presumption arising from the killing is rebutted and a verdict against the company is contrary to law.  *Western & A. R. R. Co. v. Robinson,* 114 Ga. 159; *Southern Ry. Co. v. Adkins,* 114 Ga. 135; *Railway Co. v. Whayne,* 64 S. W. 506; *Cleaveland v. Chicago & N. W. R. R. Co.,* 35 Iowa, 220; *Bemis v. Connecticut, etc., R. R. Co.,* 42 Vt. 375; *Georgia S. & F. Ry. Co. v. Sanders,* 111 Ga. 128.

*James P. Stapleton,* for respondent.

MOUNT, J.—The plaintiff in this action recovered a judgment against defendant in the court below for the sum of $200, being the value of two horses killed by defendant on its line of railway.  Defendant appeals.

Three errors are alleged, as follows:  "(1) Error in overruling the defendant's motion to strike out the answer of the witness Kaufman, wherein he testified that there was no cattle guard at the place where the horses were killed; (2) error in overruling defendant's motion for a directed verdict in its favor; (3) error in overruling the defendant's motion for a new trial."  The facts, briefly stated, are as follows:  On August 2, 1902, two horses belonging to respondent were killed by appellant's logging train at a place where the right of way was unfenced.  This train consisted of an engine, nine empty logging cars, and two empty wood cars.  The train was running on a one per cent. down grade, without steam, by gravity, at the rate of about ten or twelve miles per hour.  As the train came round a curve, the engineer saw the horses about 250 or 300 feet away on the track.  The track was on a grade several feet high.  About ninety

feet beyond the horses was a trestle about fifteen feet high. The horses started down the track toward the trestle in front of the train. About the time the horses came to the trestle the train overtook them and killed them both. They were pushed along on the trestle for about 150 feet, when they fell over the side thereof. The train went on. It did not come to a stop. Stock were frequently upon the track at this point. The engineer did all he could to stop the train after seeing the horses, but could not do so with safety to the train in time to prevent a collision. The allegation of negligence in the complaint is: "That the defendant, by its agents, officers, and servants, carelessly and negligently ran down and ran over, with its locomotive and train of cars, and killed, two horses, the property of the plaintiff; . . . that the railroad and right of way of said defendant at the point of killing was unfenced." While the witness Kaufman was on the stand, describing the place and locality where the horses were killed, he testified as follows:

"Q. Are you familiar with the track along this end of the trestle, or near where these horses were struck? A. Been over it lots of times; yes, sir. We moved out about six months ago. Q. Is it fenced along there—the trestle—the railroad on this side of the trestle, this way? A. Yes, sir; fenced on both sides. Q. Fence runs along each side of the railway track this way? A. Not clear out. They come up to the trestle—to the road. Q. The fence runs up to the track from this side? A. Yes, sir; by the road there. Q. Is there a cattle guard at this end? A. Yes, sir; where the fences come together. Q. Is there at the other end of that place? A. No, sir; none there."

Appellant thereupon moved to strike out that part of the evidence relating to cattle guards, because the complaint did not allege any negligence as to cattle guards.

The motion was denied, we think properly, because the evidence was simply descriptive of the place. The negligence alleged was in the operation of the train. The plaintiff was authorized under that allegation to show the conditions existing at that point. If the point was one where stock was frequently encountered, and where they were likely to be caught in a trap, and the employees knew this fact, much more care was required in the control of the train and rate of speed thereof than at a point not so situated. It was not error to deny the motion.

The other two errors assigned are based upon the same question, and are discussed together. Appellant's witnesses testified, in substance, that the train was running at the usual and ordinary rate of speed; that the train was equipped with the usual and ordinary appliances, and was officered with a proper crew; that the horses suddenly appeared upon the track; that as soon as they were discovered the engineer set the air brake on his engine, reversed his engine, and sounded his warning whistle; that the horses then ran along the track between the rails and out upon the trestle, where the train struck them; and that it was impossible, in any event, to stop the train before it reached the place where the horses were killed. Appellant contends that this evidence was wholly uncontradicted and undisputed, and that therefore it was the duty of the court to dismiss the case. One of plaintiff's witnesses, however, in rebuttal, testified that a train of this kind, running at the rate of ten or twelve miles per hour on a one per cent. down grade, could have been stopped within sixty feet. We think this evidence alone was sufficient to take the case to the jury. Furthermore, it is conceded that stock were frequently encountered at this place. This being true,

it was a question for the jury whether, under the conditions existing there, the company was negligent in running at such a rate of speed that the train could not be controlled, where stock was to be expected and encountered upon its track.

The judgment is affirmed.

FULLERTON, C. J., and HADLEY, ANDERS and DUNBAR, JJ., concur.